**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARC LONDON | : | CIVIL ACTION |
| 2332 Cordus Lane | : | |
| Huntingdon Valley, PA 19006 | : | |
| | : | |
| Plaintiff, | : | CASE NO.: |
| v. | : | |
| | : | |
| MILLIMAN, INC. | : | |
| 1301 Fifth Avenue, Suite 3800 | : | |
| Seattle, WA 98101 | : | |
| | : | |
| Defendant. | : | |
| | : | |

**<u>CIVIL ACTION COMPLAINT</u>**

Marc London (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

**<u>INTRODUCTION</u>**

1.      This action has been initiated by Plaintiff against Milliman, Inc. (hereinafter referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq.*), the Family Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1]  Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation, culminating in his termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff intends to amend his complaint to include claims under the PHRA once those claims are administratively exhausted, and they will mirror his claims under the ADA.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC").  Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and the PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.    Plaintiff is an adult individual, with an address as set forth in the above caption.

8.    Milliman, Inc. is an independent actuarial and consulting firm, headquartered at the above-captioned address, and with a regional branch located at 800 Cassatt Road, Suite 111, Berwyn, PA 19312.  Plaintiff was hired through and worked from Defendant's Berwyn, PA location.

9.    At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.    Plaintiff was employed by Defendant for approximately 3 years, from on or about October 14, 2022, until his unlawful termination (discussed further *infra*) on or about October 14, 2025.

12.    Plaintiff was employed by Defendant as an Actuarial Consultant for Defendant's Philadelphia Health Practice.

13.    Plaintiff was primarily managed by Principal, Maria Becker (hereinafter "Becker") and generally by Principal, Rob Pipich (hereinafter "Pipich").

14.    Throughout his employment with Defendant, Plaintiff was a very hard-working employee who performed his job well.

15.    Plaintiff has and continues to suffer from several ADA-qualifying disabilities, including but not limited to, significant back problems (*i.e.*, spinal and disc complications, radiculopathy, and disc degeneration) and associated complications/conditions.

3

16.     As a result of his aforesaid health conditions, Plaintiff suffered from pain, numbness, stiffness, and mobility issues, which (at times) limited his ability to perform some daily life activities, such as walking, sitting, and working (among other daily life activities).

17.     Despite his aforesaid health conditions and limitations, Plaintiff was able to perform his job duties; however, he (at times) required some reasonable medical accommodations.

18.     For example, on or about November 14, 2024, Plaintiff underwent back surgery (a discectomy with annulotomy and decompression) for which he applied/was approved for an ADA- and FMLA-qualifying medical leave of absence, which he extended through mid-June of 2025.

19.     Throughout his aforesaid medical leave of absence, Plaintiff continued therapy, treatment, and medication(s) for ongoing back and health complications, and regularly kept Defendant's third-party leave company and management apprised of his need for continued leave and anticipated return to work date.

20.     Plaintiff returned to work for Defendant from the aforesaid medical leave (a reasonable medical accommodation under the ADA)[2] on or about June 18, 2025.

---

[2] Courts have consistently held that leaves of absence can constitute reasonable accommodations under the ADA. *See Bernhard v. Brown & Brown of Lehigh Valley, Inc.,* 720 F.Supp.2d 694, 703 (E.D. Pa. 2010.) (citing *Conoshenti v. Public Serv. Elec. & Gas Co.,* 364 F.3d 135, 151 (3d Cir.2004)("[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned ... that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future.")); *Sharbaugh v. W. Haven Manor, LP,* CV 14-1723, 2016 WL 6834613, at *15 (W.D. Pa. Nov. 21, 2016) (finding eight (8) months of medical leave to be a reasonable accommodation); *Shannon v. City of Philadelphia,* No. 98-5277, 1999 WL 1065210, at *6 (E.D. Pa. 1999) ("Viewing the evidence in the light most favorable to [plaintiff], the court finds that a reasonable jury could conclude that [plaintiff's] request for an additional three months of unpaid leave for medical treatment was a reasonable accommodation."); *Cameron v. YRC, Inc*., No. 18-5022, 2020 U.S. Dist. LEXIS 25804, at *7 (E.D. Pa. Feb. 14, 2020).

21. Upon returning to work on or about June 18, 2025, Plaintiff had some limited medical accommodation needs (as verified in medical documentation such as ADA forms and return-to-work medical documentation submitted to Defendant).

22. Specifically, upon returning to work from his medical leave, Plaintiff needed: (a) to periodically change position (sitting and standing); and (b) breaks/flexibility as needed (for stretching, pain management, and for therapeutic reasons). Neither of these requests posed an undue burden to Defendant, as Plaintiff's accommodation needs did not impact his overall duties or work expectations.

23. Plaintiff endured very significant antagonism from Defendant's management upon returning to work. In particular, Pipich and Human Resources ("HR") Business Partner, Miranda Diaz (hereinafter "Diaz") appeared to be extremely annoyed with Plaintiff's accommodation requests.

24. Following his return from medical leave, Pipich and Diaz began speaking to Plaintiff in a condescending manner and as if he were an annoyance. This was starkly different than how Plaintiff was perceived and treated professionally for years pre-medical leave and pre-accommodation needs.

25. Moreover, in clear retaliatory fashion, simply because Plaintiff had missed several months of medical leave in late 2024, he was not given an annual pay increase or bonus (or even a partial or prorated bonus) in 2025.

26. Because Plaintiff was still having ongoing back and overall health problems, he had in fact updated Defendant's relevant personnel and management, including but not limited to Becker, in the late summer (and through September of 2025) that he was still having medical complications and continued to provide any paperwork required by Defendant for the same.

27.     Defendant's management, however, pushed back on Plaintiff's need to change position and take a break from sitting during meetings and/or limiting meeting durations so that Plaintiff could move.

28.     Specifically, Defendant's management required Plaintiff to obtain updated accommodation paperwork from his doctor requiring language about limiting the duration of meetings to accommodate his health conditions – even though Plaintiff's initial doctor's documentation following his return from medical leave already generally addressed the need to move and change position due to extended sitting (set forth *supra*).

29.     Plaintiff provided this updated ADA form via email to Defendant on or about August 22, 2025 (separate from other ongoing discussions).

30.     Thereafter, on or about September 11, 2025, Plaintiff was scheduled for a meeting (to take place on September 18, 2025) with Defendant's management, including but not limited to, Diaz and Pipich for a "Work Restriction Touch Base" meeting.

31.     During this aforesaid meeting, it was shared with Plaintiff there were concerns about providing him with the medical accommodations he was seeking or using because, ***for the first time in Plaintiff's nearly three years of employment***, Pipich mentioned very vaguely that Defendant was concerned about some of Plaintiff's purported performance problems.

32.     Not only was Pipich vague about Plaintiff's alleged performance concerns, but he also advised Plaintiff he may need to further evaluate Plaintiff's performance moving forward.

33.     The aforesaid September 18, 2025 meeting was concluded by Pipich informing Plaintiff that HR would reach out to Plaintiff to discuss "specific concerns" about Defendant's ability to accommodate his medical conditions.

34.    Thereafter, on or about October 2, 2025, Plaintiff attempted to follow up with Defendant's management, by emailing Pipich and Diaz that "It's been two weeks since our initial discussion regarding my updated ADA form, and I wanted to follow up. At that meeting, I understood that HR would provide me with the specific concerns around accommodating my restrictions, and that the company would attempt to work within the form in the meantime."

35.    In his aforesaid October 2, 2025 email, Plaintiff further recapped some of his medical accommodation discussions with Defendant's management, attempting an interactive dialogue and asking for any follow up, whether it be from them or HR.

36.    Then, roughly an hour after Plaintiff registered some concerns about having received no response from Defendant regarding his accommodation status for weeks, Diaz emailed Plaintiff (on October 2, 2025) as follows:

> *Hi Marc-*
>
> *As discussed during our meeting, we confirmed the practice would be temporarily accommodating your most recent restrictions pending final decision. Rob and I actually had a follow up meeting earlier this morning to discuss next steps. Rob will be scheduling us for a follow-up meeting likely Monday to re-group. I expect we will likely need more than a half hour to get through it.  Please kindly let me know how much time you would need in between meetings should we need more time. With Health Forum next week, I want to ensure we have enough time to cover it all.*

37.    On or about October 7, 2025, Plaintiff emailed Diaz and Pipich in a lengthy manner, which included generally: (1) concerns "[Plaintiff's] ADA accommodation has not been implemented in good faith;" (2) numerous examples of non-accommodation; (3) concerns that Plaintiff was suddenly viewed as a performance problem while discussing his ADA accommodations; and (4) Plaintiff's perceptions that a false narrative was being created and that mischaracterizations were occurring.  In sum, Plaintiff expressed that he felt mistreated because

of his disabilities, retaliated against as a result of his requested accommodations, and not properly accommodated medically.

38.    By way of further example, on or about October 6, 2025, Plaintiff emailed Diaz and Pipich, expressing his potential intent to file "a complaint" with "the Equal Employment Opportunity Commission [EEOC]."

39.    In the aforementioned October 6, 2025 email, Plaintiff further wrote:

*That said, I remain committed to continuing to work at Milliman and to performing successfully within my documented medical restrictions. I would prefer to find a path forward that allows me to contribute productively in an environment that supports my health. However, if management feels that my situation is no longer compatible with the firm's needs, I would be open to discussing a mutual separation arrangement that allows both parties to move forward amicably.*

40.    Plaintiff's aforesaid October 6, 2025 email made it clear that: (a)  he preferred to keep working with Defendant and merely wanted support for his ongoing health complications; but (b) if Defendant did not want him to work for the company any longer, he would consider the possibility of an offered severance package (if Plaintiff determined it was worthwhile enough to consider resigning).  But to be clear, Plaintiff wanted to keep working for Defendant.

41.    On or about October 14, 2025, Plaintiff was then abruptly terminated by Pipich and Diaz.

42.    During the aforesaid termination call, Plaintiff was informed of the following: (1) Defendant was purportedly "terminating [Plaintiff] with cause"; (2) due to alleged improper PTO recording; and (3) Plaintiff was advised that Defendant was "confident termination could be legally backed up."

43.    Plaintiff was then informed, as a purported "good will gesture," that despite being allegedly terminated for cause, Defendant was offering him a minimal amount of severance pay,

provided he sign an agreement waiving any claims he might have against Defendant (including those for discrimination and retaliation).[3]

44.     In sum, in the months following Plaintiff's return from medical leave in or about mid-June of 2025:

    a.  Plaintiff being subjected to significant animosity;

    b.  Defendant was denying Plaintiff a 2025 pay increase and (partial or full) bonus;

    c.  Plaintiff was being told he suddenly had performance concerns;

    d.  Despite Plaintiff stating if he was no longer wanted, he would be open to hearing Defendant out on severance even though he wanted to try to retain his job and continue engaging in the interactive process as required by the ADA, Defendant immediately inquired about severance without attempting to accommodate his health conditions;

    e.  Defendant failed to conduct an investigation or interview Plaintiff about his EEOC-related discrimination and retaliation concerns and accommodation mistreatment;

---

[3] *See e.g. Staffieri v. Northwestern Human Servs*., 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. May 22, 2013)(an employer who offered severance when policies did not require upon condition of waiving FMLA claim supported finding of pretext in FMLA claim among other facts); *See also Bartlett v. NIBCO Inc*., 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)("Severance pay packages contingent upon a release of c claims which are offered contemporaneously with the notice of termination are not covered by [Rule 408]", and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *EEOC v. Republic Servs., Inc*., 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy)."

f. Defendant terminated Plaintiff for a totally different (manufactured) cause-based reason not previously addressed with him after exhibiting a clear pattern and desire to get rid of Plaintiff (offering him no meaningful interactive and/or due process to respond to asserted reasons for termination);

g. Defendant came up with a completely pretextual reason to terminate Plaintiff right after (and in very close temporal proximity to) Plaintiff's discrimination complaints; and

h. Finally, contrary to any policies, Defendant offered Plaintiff severance despite Plaintiff supposedly being terminated for misconduct.

45. Defendant failed to properly accommodate Plaintiff by refusing to award him a 2025 pay increase or bonus as a direct result of his aforementioned medical leave of absence and documenting alleged performance concerns for the first time following the same.

46. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, and retaliation because of: (1) his actual/perceived/record of disabilities; (2) his requested medical accommodations; (3) his expressed objections to/concerns of unfair treatment as a result of his serious health conditions and requested accommodations; and (4) Defendant's failure to properly accommodate Plaintiff's disabilities (set forth *supra*).

47. Plaintiff believes and therefore also avers that his serious medical conditions were motivating and/or determinative factors in the termination of his employment by Defendant.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10

49.     Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

50.     Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

51.     Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require some reasonable medical accommodations at times.

52.     Plaintiff requested reasonable accommodations from Defendant including but not limited to a medical leave of absence, the ability to periodically change position (sitting and standing), breaks/flexibility as needed (for stretching, pain management, and for therapeutic reasons), and limiting the duration of meetings due to his inability to sit for long periods of time.

53.     Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/or derogatory treatment because of his aforesaid health conditions and requested accommodations.

54.     Plaintiff directly opposed the aforesaid mistreatment he was subjected to as a result of his health conditions and accommodation needs, leading up to his termination.

55.     Instead of addressing Plaintiff's concerns of discrimination, retaliation, and a failure to properly accommodate him, Defendant terminated Plaintiff on or about October 14, 2025, directly for requesting and/or utilizing reasonable medical accommodations (set forth *supra*), and in close proximity to his objections to/complaints of unfair treatment as a result of the same.

56. Defendant failed to properly accommodate Plaintiff by refusing to award him a 2025 pay increase or bonus as a direct result of his aforementioned medical leave of absence and documenting alleged performance concerns for the first time following the same.

57. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, and retaliation because of: (1) his actual/perceived/record of disabilities; (2) his requested medical accommodations; (3) his expressed objections to/concerns of unfair treatment as a result of his serious health conditions and requested accommodations; and (4) Defendant's failure to properly accommodate Plaintiff's disabilities (set forth *supra*).

58. Plaintiff believes and therefore also avers that his serious medical conditions were motivating and/or determinative factors in the termination of his employment by Defendant.

59. These actions as aforesaid constitute violations of the ADA.

## COUNT II
### Violations of the Family and Medical Leave Act ("FMLA")
### ([1] Interference & [2] Retaliation)

60. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

62. Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

63. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

64.    Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

65.    Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

66.    Plaintiff was terminated in close proximity to his request for/utilization of block medical leave to care for and treat his serious health conditions.

67.    Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; and (4) making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA.

68.    These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority;

C.    Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish

Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

      D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

      E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

      F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

      G.      Plaintiff's Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:    _____

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: May 21, 2026

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Marc London | : | CIVIL ACTION |
| v. | : | |
| Milliman, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (  )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          (  )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          (  )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)          (  )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.   (x )

| | | |
|---|---|---|
| 5/21/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:  Defendants place of business

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1.  Does this case involve property included in an earlier numbered suit?                                                                                                  Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?                                   Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?              Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same              Yes ☐
    individual?

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?                                             Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.  *Federal Question Cases:***

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☐ 8.  Employment
☐ 9.  Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.  *Diversity Jurisdiction Cases:***

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases:  *(Please specify)*_____
      _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a) PLAINTIFFS**  LONDON, MARC | **DEFENDANTS**  MILLIMAN, INC. |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff  Montgomery  *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant  King  *(IN U.S. PLAINTIFF CASES ONLY)*  NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*  Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance  [ ] 120 Marine  [ ] 130 Miller Act  [ ] 140 Negotiable Instrument  [ ] 150 Recovery of Overpayment & Enforcement of Judgment  [ ] 151 Medicare Act  [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)  [ ] 153 Recovery of Overpayment of Veteran's Benefits  [ ] 160 Stockholders' Suits  [ ] 190 Other Contract  [ ] 195 Contract Product Liability  [ ] 196 Franchise | **PERSONAL INJURY**  [ ] 310 Airplane  [ ] 315 Airplane Product Liability  [ ] 320 Assault, Libel & Slander  [ ] 330 Federal Employers' Liability  [ ] 340 Marine  [ ] 345 Marine Product Liability  [ ] 350 Motor Vehicle  [ ] 355 Motor Vehicle Product Liability  [ ] 360 Other Personal Injury  [ ] 362 Personal Injury - Medical Malpractice | [ ] 625 Drug Related Seizure of Property 21 USC 881  [ ] 690 Other | [ ] 422 Appeal 28 USC 158  [ ] 423 Withdrawal 28 USC 157  **INTELLECTUAL PROPERTY RIGHTS**  [ ] 820 Copyrights  [ ] 830 Patent  [ ] 835 Patent – Abbreviated New Drug Application  [ ] 840 Trademark  [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act  [ ] 376 Qui Tam (31 USC 3729(a))  [ ] 400 State Reapportionment  [ ] 410 Antitrust  [ ] 430 Banks and Banking  [ ] 450 Commerce  [ ] 460 Deportation  [ ] 470 Racketeer Influenced and Corrupt Organizations  [ ] 480 Consumer Credit (15 USC 1681 or 1692)  [ ] 485 Telephone Consumer Protection Act  [ ] 490 Cable/Sat TV  [ ] 850 Securities/Commodities/ Exchange |
| | **PERSONAL INJURY**  [ ] 365 Personal Injury - Product Liability  [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability  [ ] 368 Asbestos Personal Injury Product Liability  **PERSONAL PROPERTY**  [ ] 370 Other Fraud  [ ] 371 Truth in Lending  [ ] 380 Other Personal Property Damage  [ ] 385 Property Damage Product Liability | **LABOR**  [ ] 710 Fair Labor Standards Act  [ ] 720 Labor/Management Relations  [ ] 740 Railway Labor Act  [ ] 751 Family and Medical Leave Act  [ ] 790 Other Labor Litigation  [ ] 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**  [ ] 861 HIA (1395ff)  [ ] 862 Black Lung (923)  [ ] 863 DIWC/DIWW (405(g))  [ ] 864 SSID Title XVI  [ ] 865 RSI (405(g))  **FEDERAL TAX SUITS**  [ ] 870 Taxes (U.S. Plaintiff or Defendant)  [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 890 Other Statutory Actions  [ ] 891 Agricultural Acts  [ ] 893 Environmental Matters  [ ] 895 Freedom of Information Act  [ ] 896 Arbitration  [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision  [ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**  [ ] 210 Land Condemnation  [ ] 220 Foreclosure  [ ] 230 Rent Lease & Ejectment  [ ] 240 Torts to Land  [ ] 245 Tort Product Liability  [ ] 290 All Other Real Property | **CIVIL RIGHTS**  [ ] 440 Other Civil Rights  [ ] 441 Voting  [ ] 442 Employment  [ ] 443 Housing/ Accommodations  [X] 445 Amer. w/Disabilities - Employment  [ ] 446 Amer. w/Disabilities - Other  [ ] 448 Education | **PRISONER PETITIONS**  **Habeas Corpus:**  [ ] 463 Alien Detainee  [ ] 510 Motions to Vacate Sentence  [ ] 530 General  [ ] 535 Death Penalty  **Other:**  [ ] 540 Mandamus & Other  [ ] 550 Civil Rights  [ ] 555 Prison Condition  [ ] 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**  [ ] 462 Naturalization Application  [ ] 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE  5/21/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____